IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Patrick K. Donnelly, | ) | Civil Action No. 2:20-cv-3719-RMG |
| 8 Church Street, Charleston, South Carolina | ) | |
| 29401, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER AND OPINION** |
| | ) | |
| v. | ) | |
| | ) | |
| Linden Capital Partners III, L.P., | ) | |
| 150 N. Riverside Plaza, Suite 5100 | ) | |
| Chicago, Illinois 60606, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Before the Court is Plaintiff Patrick K. Donnelly's motion to stay arbitration (Dkt. No. 3) and Defendant Linden Capital Partners, III, L.P.'s cross-motion to compel arbitration (Dkt. No. 11). For the reasons set forth below, the Court grants Plaintiff's motion to stay arbitration and denies Defendant's motion to compel arbitration.

I.    **Background**

Plaintiff Patrick K. Donnelly is an executive who works in the medical device and pharmaceutical field. Defendant Linden Capital Partners, III, L.P. ("Linden") is a private equity firm that invests exclusively in healthcare companies. Around December 14, 2015, Donnelly signed an Operating Partner Agreement ("OPA") with Linden. (Dkt. No. 1-1). Under the OPA, Donnelly agreed to provide advisory services to Linden "as an independent contractor." (*Id.* ¶¶ 1, 3). The OPA "anticipated" that Donnelly would "serve as a Chief Executive Officer if Linden acquires or invests in a target company for which [Donnelly] will have performed services as outlined in this agreement." (*Id.* ¶ 1). Under the OPA, Donnelly's compensation was comprised of a yearly "consulting fee" and discretionary "transaction fees." (*Id.* ¶ 2) (noting that upon

completion of "an equity investment by Linden in a Target Company for which [Donnelly] has significantly contributed to sourcing, winning and/or performing due diligence as determined solely by Linden" Donnelly would receive a "cash fee of 10% of the transaction fee related to the capital invested by Linden Capital Partner III LP and Linden Capital Partners III-A LP"). The OPA permits either party to terminate with "30 days prior written notice." (*Id.* ¶ 1). The OPA does not contain an arbitration clause.

In late 2017, Linden formed Advarra, Inc. ("Advarra") and on November 7, 2017 Donnelly signed an "Employment Agreement" with Advarra to become its CEO. (Dkt. No. 1 at ¶¶ 126-27, 132). The Employment Agreement provided for a base salary of $400,000 per year plus the potential for a bonus. (Dkt. No. 3-2 ¶ 4). Section 12 contains an arbitration clause:

> Except with respect to any attempt to resolve Section 10 (Non-Competition and Non-Solicitation) of this Agreement (in which case any matter may be brought initially in a court of competent jurisdiction for purposes of resolving any request for preliminary injunctive relief), all disputes between [Advarra] or any of its subsidiaries or affiliates and [Donnelly] hereunder, or otherwise arising out of the employment or termination of employment of [Donnelly], including but not limited to disputes arising under any state or federal employment discrimination law, shall be settled by arbitration pursuant to the then in effect rules for the resolutions of employment disputes of the American Arbitration Association in Washington, D.C.

(*Id.* ¶ 12). Donnelly served as Advarra's CEO from November 7, 2017 through August 31, 2019. (*Id.* ¶ 135). Concurrently with serving as CEO of Advarra Donnelly allegedly "carried out his duties as a Linden Operating Partner and consultant" under the OPA. (*Id.*).

On October 22, 2020, Donnelly filed his complaint in federal district court. Donnelly alleges that Linden owes him consulting fees for November 2017 through August 2019 and earned transactions fees on specific transactions he was involved with as an Operating Partner. (*Id.*¶¶ 48-50, 59-117, 124); *see also* (*Id.* ¶ 36) (alleging that to date Linden has not "terminated [Donnelly]

from his position with Linden or given any notice, written or otherwise, of termination pursuant to the OPA").  Donnelly brings claims for breach of contract and unjust enrichment.

Concurrently with his complaint, Donnelly filed a motion to stay arbitration, (Dkt. Nos. 3 and 20), which Linden opposes, (Dkt. No. 10).  Donnelly explains that around September 23, 2020, about a month before filing his complaint, Linden made a demand on Donnelly for arbitration (the "Arbitration Demand") with the American Arbitration Association. (Dkt. No. 3-3).   In the Arbitration Demand, Linden describes Donnelly's efforts to obtain the identical consulting and transactions fees noted above. (*Id.* at 3-5, 11-13) (noting "Donnelly has claimed that he is owed additional consulting fees . . . under his Operating Partner Agreement").  Then, invoking the Employment Agreement's arbitration clause, Linden asks the arbitral panel to declare that "Linden does not owe Donnelly any of the payment he seeks under the [OPA] and [the] Employment Agreement." (*Id.* at 14-15); *see also* (*Id.* at 9-10) (arguing the OPA terminated on November 7, 2017 when Donnelly signed the Employment Agreement and arguing the Employment Agreement's arbitration clause "provided that any disputes between Donnelly and Advarra or any of its affiliates . . . were subject to binding" arbitration).

On November 5, 2020, Linden filed a cross-motion to compel arbitration, (Dkt. Nos. 11 and 34), which Donnelly opposes, (Dkt. 31).

The parties' motions are both fully briefed and ripe for disposition.

## II.    **Legal Standard**

The Federal Arbitration Act ("FAA") provides that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction "shall be valid, irrevocable and enforceable" unless there are grounds for revocation in law or equity. 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). A litigant can compel arbitration under the FAA if the litigant can demonstrate: " '(1) the existence of a dispute between the parties,

(2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction ... to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute.'" *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (*quoting Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002)). If a valid arbitration agreement exists and covers the claims at issue, this Court has "no choice but to grant a motion to compel arbitration." *Adkins*, 303 F.3d at 500. Whether the parties agreed to arbitrate a particular dispute is a question of state law governing contract formation. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).

III.    **Discussion**

      A.    **Existence of a Valid Arbitration Agreement**

As a preliminary matter, Donnelly contests the existence of an arbitration agreement between himself and Linden. Specifically, Donnelly argues that because Liden is no longer an "affiliate" of Advarra it cannot invoke the Employment Agreement's arbitration clause. Liden contends otherwise. Having considered both parties' arguments, the Court finds that Linden has no enforceable arbitration rights under Donnelly's Employment Agreement with Advarra.

Donnelly correctly notes that the Employment Agreement is between himself and Advarra. *See* (Dkt. No. 3-2 at 2, 13) (noting that "all disputes between [Advarra] or any of its affiliates and Employee hereunder, other otherwise arising out of the employment or termination of employment of Employee" are subject to binding arbitration). Donnelly further notes that when Linden filed its Arbitration Demand on September 23, 2020 Linden was, by its own admission, no longer an "affiliate" of Advarra. *See* (Dkt. No. 11-1 at 13) (noting that when "Donnelly signed the Advarra Employment Agreement, Linden was . . . the majority owner and controlling shareholder of Advarra" but that, as of today, "[m]ember partners of Linden [are] *minority shareholders*") (emphasis added); *see also* (Dkt. No. 11-3 at 2) (noting Linden sold Advarra to Genstar Capital on

July 9, 2019).  And while Linden is correct that the Fourth Circuit recently "reaffirmed the right of affiliates to compel arbitration" in *Mey v. DirectTV, LLC*, (Dkt. No. 11-1 at 12), the *Mey* court explicitly defined "affiliate" as meaning "'a company effectively *controlled* by another or associated with others under *common ownership* or *control*.'" *See Mey v. DirectTV, LLC*, 971 F.3d 284, 289 (4th Cir. 2020) (emphasis added) (finding entity which became affiliate of signatory after contract was signed could invoke arbitration clause, noting that "we conclude—as the district court appears to have acknowledged and Mey does not dispute—that DIRECTV is *currently* an affiliate of AT&T Mobility") (emphasis added).  *Geier v. Mozido, LLC*, a case Linden cites in its support of its motion to compel arbitration, does not dictate an opposite conclusion. *Geier v. Mozido, LLC*, No. CV 10931-VCS, 2016 WL 5462437, at *6 (Del. Ch. Sept. 29, 2016) (noting that "[i]f the term 'affiliate' would include an entity in control of the Geier Trust or the Geier Group, there is no reason to limit the definition so that an individual in that same position of control would not likewise be deemed an affiliate of the releasors").  As Linden is no longer an affiliate of Advarra, and as the OPA undisputedly does not contain an arbitration clause, the Court finds that no valid arbitration agreement exists between Donnelly and Linden.  *See St. Denis v. OneMain Fin., Inc.*, No. 8:12-CV-01669-TMC, 2012 WL 6061022, at *1 (D.S.C. Dec. 6, 2012) (analyzing an arbitration clause that explicitly mandated arbitration of claims "arising out of or in any way related to employment . . . that may arise between an employee or former employee and *Citi*, its predecessors, successors, and assigns, its current and *former . . . affiliates* and its current and *former* officers, directors, employees, and agents") (emphasis added).

### B.    Equitable Estoppel

In the event the Court finds, as it has, that no valid arbitration agreement exists between the parties, Linden seeks to compel arbitration through the common law doctrines of "substantial relationship" or "estoppel." (Dkt. No. 11-1 at 14-15).

In the Fourth Circuit, a nonsignatory may only "enforce, or be bound by, an arbitration provision within a contract executed by other parties" in "an appropriate case." *Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 416–17 (4th Cir. 2000). The Fourth Circuit clarified that "appropriate" circumstances include: (i) when the claims against "a parent company and its subsidiary are based on the same facts and are inherently inseparable"; (ii) incorporation by references; (iii) assumption; (iv) agency; (v) veil piercing/alter ego; and (vi) estoppel. *Int'l Paper Co.*, 206 F.3d at 416–17 (citing *Thomson–CSF, S.A. v. American Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)).

The Fourth Circuit has referred to the "substantial relationship" theory as the "intertwined claims" test. *Brantley v. Republic Mortg. Ins. Co.*, 424 F.3d 392, 395–96 (4th Cir. 2005). In *Brantley*, the Fourth Circuit recognized that equitable estoppel applies in two main circumstances. First, equitable estoppel may apply "when the signatory to a written agreement containing an arbitration clause ... rel[ies] on the terms of the written agreement in asserting [its] claims against the non-signatory." *Id.* Under this inquiry, the signatory's claims must "arise[ ] out of and relate [ ] directly to the [written] agreement" such that "each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement." *Id.*; *see also Am. Bankers Ins. Grp., Inc. v. Long*, 453 F.3d 623, 627–28 (4th Cir. 2006) (finding that estoppel is only appropriate if "in substance [the signatory's underlying] complaint [is] based on the [nonsignatory's] alleged breach of the obligations and duties assigned to it in the agreement"). Second, equitable estoppel may alternatively apply "when the signatory [to the contract] containing an arbitration clause raises allegations of ... substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Brantley*, 424 F.3d at 395–96 (internal citation omitted). Under either circumstance, the central focus is

whether the party avoiding arbitration "has consistently maintained that other provisions of the same contract should be enforced to benefit him." *See Int'l Paper Co.*, 206 F.3d at 418.

Here, the doctrine of equitable estoppel is wholly inapplicable. As made clear by both Donnelly's Complaint and Linden's Demand for Arbitration, Donnelly's claims concern allegedly unpaid consulting and transaction fees under the OPA. Donnelly does not attempt to bring any claims against Advarra nor does Donnelly anywhere, in formulating his claims against Linden, rely on or otherwise attempt to benefit from the terms of the Employment Agreement. *See Int'l Paper Co.*, 206 F.3d at 418 (nonsignatory estopped from avoiding contract's arbitration provision where its "entire case hinge[d] on its asserted rights" under said contract). Instead, it is Linden that attempts to "intertwine" the Employment Agreement with the OPA by arguing that the Employment Agreement "terminated" the OPA. (Dkt. No. 11-1 at 15) (noting that because "Linden argues that the Advarra Employment Agreement terminated the OPA . . . the determination of the parties' claims is inextricably intertwined with the interpretation and application of the Advarra Employment Agreement, which contains a binding arbitration clause"). *See Weckesser v. Knight Enterps. S.E., LLC.*, 228 F. Supp. 3d 561, 566 (D.S.C. 2017) (rejecting nonsignatory defendant's invocation of equitable estoppel, noting the "Arbitration Agreement here is a separate contract. It does not matter if Plaintiff has relied on the terms of the Services Agreement to make his claim because Plaintiff has not in any way relied on provisions of the Arbitration Agreement in his complaint"); *Brantley*, 424 F.3d at 396 ("The lawsuit in the current case deals with Republic Mortgage's insurance premiums, and an allegation that these premiums were increased due to information contained in the plaintiffs' credit histories. This claim is a statutory remedy under the Fair Credit Reporting Act and is wholly separate from any action or remedy for breach of the underlying mortgage contract [with a nonparty] that is governed by the arbitration agreement.

Although the mortgage insurance relates to the mortgage debt, the premiums of the mortgage insurance are separate and wholly independent from the mortgage agreement. The district court correctly found that the mere existence of a loan transaction requiring plaintiffs to obtain mortgage insurance cannot be the basis for finding their federal statutory claims, which are wholly unrelated to the underlying mortgage agreement, to be intertwined with that contract."); *see also In re Humana Inc. Managed Care Litig.*, 285 F.3d 971, 976 (11th Cir. 2002) (noting "plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory defendant is . . . always the *sine qua non* of an appropriate situation for applying equitable estoppel") *rev'd on other grounds*, *PacifiCare Health Sys. v. Book*, 538 U.S. 401 (2003).  In sum, as Donnelly has "never attempt[ed] to rely on the [Employment Agreement] to establish [his] claims, nor [did] [he] allege concerted action between [Linden] and [Advarra]," equitable estoppel in any form is inapplicable.  *Brantley*, 424 F.3d at 396. *See also Newbanks v. Cellular Sales of Knoxville, Inc.*, 548 Fed. Appx. 851 (4th Cir. 2013) (affirming denial of motion to compel arbitration because the contract on which movant relied did not govern the particular relationship and time period at issue).

## IV.    Conclusion

For the foregoing reasons, Plaintiff's motion to stay arbitration (Dkt. No. 3) is **GRANTED** and Defendant's motion to compel arbitration (Dkt. No. 11) is **DENIED.**

**AND IT IS SO ORDERED.**

s/ Richard Mark Gergel
United States District Court Judge

December 8, 2020
Charleston, South Carolina